# IN THE UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

## Case No. 4:21-cv-00270-AW-MJF

WEST FLAGLER ASSOCIATES, LTD.,
a Florida Limited Partnership d/b/a
MAGIC CITY CASINO, and
BONITA-FORT MYERS
CORPORATION, a Florida
Corporation d/b/a
BONITA SPRINGS POKER ROOM,

   Plaintiffs,

v.

RONALD DION DESANTIS, in his
official capacity as Governor of the
State of Florida, and JULIE IMANUEL
BROWN, in her official capacity as Secretary
of the Florida Department of Business
and Professional Regulation,

   Defendants.

_____

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## SEMINOLE TRIBE'S LIMITED MOTION TO INTERVENE

  Plaintiffs, West Flagler Associates, Ltd. and Bonita-Fort Myers Corporation

(collectively, "Plaintiffs") submit their Memorandum in Opposition to the Seminole

Tribe's Limited Motion to Intervene (the "Motion") [DE 20].

1

## I.  PRELIMINARY STATEMENT

This action poses two questions: (1) whether the Governor acted *ultra vires* in agreeing to the online and off-reservation sports betting ("OSB") provisions of the 2021 Gaming Compact (the "Compact"), between the Seminole Tribe of Florida (the "Tribe") and the State of Florida (the "State"); and (2) whether the OSB provisions of Section 285.710, Florida Statutes, (the "Implementing Law") are *ultra vires* and therefore invalid.  Notwithstanding the Tribe's repeated assurances to Legislators that courts would resolve all legal doubts, the Tribe now claims that its interest in the Compact warrants not only its limited joinder *as of right*, but also outright dismissal, because it is an indispensable party that cannot be joined due to tribal sovereign immunity.

The Court should deny the Motion for at least three reasons:

*First*, the Tribe relies on conclusory, unverified assertions and its asserted sovereign status does not entitle it to the relief it seeks.

*Second*, Defendants, Ronald Dion DeSantis (the "Governor") and Julie E. Brown (the "Secretary"), (collectively, "Defendants") can and will adequately represent the Tribe's interest in this action; hence, the Tribe cannot satisfy Rule 24(a), Rule 19(a)(2)(i), or Rule 19(b).

*Third*, limited intervention would be futile, because (a) the Tribe cannot establish it is an indispensable party; (b) there is no risk of inconsistent obligations

to the Defendants; and (c) equity requires that this action continue as filed—between Plaintiffs and Defendants.[1]

## II.   FACTUAL BACKGROUND

On April 23, 2021, the Governor executed the Compact.  [DE 18, Ex. A].  The unprecedented agreement is the first time a state has granted a tribe a monopoly to engage in gaming *outside* the confines of the tribe's reservation.  The Tribe and the Governor knew that the OSB provisions would be challenged in court and took it into account in the Compact:

1. The Tribe and the State affirm their belief that this Compact embodies an unprecedented level of cooperation between a state and a sovereign government, which benefits the long-term economic and social well-being of both the State and the Tribe.  [DE 18, Ex. A; II, J].

2. Each party hereto agrees to defend the validity of the Compact.  [*Id.*; XIV, F].

3. Each provision, section, and subsection of this Compact shall stand separate and independent of every other provision, section, or subsection, and shall be interpreted to ensure compliance with lGRA.  In the event that a federal district court in Florida or other court of competent jurisdiction shall find any provision, section, or subsection of this Compact to be invalid, the remaining provisions, sections, and subsections of this Compact shall remain in full force and effect, provided that severing the invalidated provision, section or subsection does not undermine the overall intent of the parties in

---

[1] The Tribe's Motion to Dismiss [DE 21] ("MTD") is not before this Court.  Because overlap exists between Rule 24 (intervention) and Rule 19 (joinder), Plaintiffs preliminarily address the arguments here.  Plaintiffs, however, respectfully request a fair and full opportunity to address the Tribe's MTD in the unlikely event the Motion is fully granted.

entering into this Compact. . . . **If at any time the Tribe is not legally permitted to offer Sports Betting as described in this Compact, including to Patrons physically located in the State but not on Indian Lands, then the Compact will not become null and void,** but the Tribe will be relieved of its obligation to pay the full Guaranteed Minimum Compact Term Payment, as explained in Part XI, Section C.4(e).   However, Payments due to the State pursuant to Part XI Sections C and E of this Compact shall continue. (The "Sports Betting Severability Clause").  [*Id.*; XIV, A] (emphasis added).

4.  [I]f the Tribe's authorization to conduct the Covered Games is invalidated, in whole or in part, as a result of a court decision; provided, **if at any time the Tribe is not legally permitted to offer Sports Betting as described in this Compact, including to Patrons physically located in the State but not on Indian Lands,** or the Tribe loses the exclusive right to offer Sports Betting as provided in Part XII, Sections A.3.(a) or B.1, **then the Tribe's obligation to pay the full Guaranteed Minimum Compact Term Payment and the other minimum payments set forth in this Section shall be reduced by ten (10) percent.**  [*Id.*; XI, C.4(e)] (emphasis added).

5.  The Governor also affirms that he will take **all appropriate steps** to effectuate its purposes and intent.  [*Id.*; XIX] (emphasis added).

The legislature held a special session to consider ratification of the Compact. Given the serious reservations of legislators against allowing the Tribe to offer ***all*** types of casino games online or via mobile device, the Compact was amended to delete those provisions.  The Compact was further amended to delay the OSB effective date until October 15, 2021.  [DE 18; ⁋105].

Notwithstanding the amendments, legislators expressed hesitancy in ratifying the Compact due to their concerns surrounding the legality of the OSB provisions.

[DE 18, ¶126].  To placate doubts and ensure ratification, the Tribe, the Governor, and bill sponsors repeatedly reassured legislators that the legality of the OSB provisions would be determined by the courts.  Specifically, Jim Allen, CEO of Seminole Casinos, testified before two committees "candidly" reassuring members the courts would have the last word:

> It is possible that a court will determine that the Tribe is wrong in its interpretation of the amendment or federal law associated with IGRA.  **Specifically, this is why we encourage you to vote for the compact.** . . . That risk is all on the Tribe. . . We're very prepared for someone to legally challenge this compact.  If we were not to prevail in a state or federal court for the purpose of sport betting being authorized, the Tribe has already stated in the document it will honor the revenue share from our land based casino operations. . .
>
> . . .
>
> [T]he Tribe would certainly need to, number one, see who files the lawsuit.  Number two, do they have standing in the case?  Number three, we would be happy to work with the state of Florida defending the case.  If the case is solely against the Tribe, the Tribe 100% accepts all financial responsibilities to defend it.  **Candidly, see how it's filed and work with the state to see what their position is.**

Fla. H.R. Select Subcomm. Seminole Gaming Compact, recording of proceedings, 1:27:36;  1:57:24  (May  17,  2021)  https://thefloridachannel.org/videos/5-17-21-house-select-subcommittee-on-the-seminole-gaming-compact/   (on   file   with subcomm.) (providing testimony of Jim Allen, representing the Seminole Tribe of Florida) (emphasis added).[2]

---

[2] During the same hearing, the Tribe's gaming counsel, Joe Webster, addressed legal issues and potential challenges, never once mentioning sovereign immunity.  Fla.

**When someone asks about the legality of sports betting … whether it does or does not apply with IGRA, very candidly, it does not matter.** Because the state of Florida is not taking a risk. By approving this compact, the Tribe takes the risk if in court, the Tribe does not prevail with its belief that the sports betting is legal, then it is still committed to pay to the state of Florida [for] thirty years all of its revenue share on all of its land based casinos. . . **And, candidly, if it does not succeed in court, it is taking the risk, not the state.**

Fla. S. Comm. on Appropriations, recording of proceedings, 1:00:25 (May 17, 2021)

https://thefloridachannel.org/videos/5-17-21-senate-committee-on-appropriations/

(on file with comm.) (providing testimony of Jim Allen, representing the Seminole

Tribe of Florida).[3]

As Mr. Allen sprinkled his remarks with "candidly," he was being less than candid about the Tribe's true intent. In reliance, legislators in good faith voted to approve the Compact thinking the courts would tell them whether or not OSB was legal. Having misled the legislature in this way, the Tribe cannot now claim that it should be allowed to intervene in order to snatch that decision away from this Court.

---

H.R. Select Subcomm. Seminole Gaming Compact, recording of proceedings, 2:13: (May 17, 2021) https://thefloridachannel.org/videos/5-17-21-house-select-subcommittee-on-the-seminole-gaming-compact/ (on file with subcomm.) (providing testimony of Joe Webster, representing the Seminole Tribe of Florida).

[3] The Court may take judicial notice of a government record. *Chinn v. PNC Bank, N.A.*, 451 F. App'x 859, 860 n.1 (11th Cir. 2012) ("A district court may take judicial notice of facts capable of accurate and ready determination by using sources whose accuracy cannot reasonably be questioned, including public records.").

## III.   LEGAL STANDARD

A nonparty "who seeks to intervene as a matter of right under Rule 24(a)(2) must establish, among other things, that he has a legally protectable interest in the litigation which is inadequately represented by the existing parties to the lawsuit." *United States v. Georgia*, 19 F.3d 1388, 1393 (11th Cir. 1994).  The nonparty's "interest must be 'direct, substantial, [and] legally protectable.'"  *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991).  Importantly, courts only consider well-pleaded, nonconclusory allegations in the motion to intervene and declarations[4] supporting the motion as true, absent sham, frivolity, or other objections.  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001); *see In re Pinchuk*, 2014 WL 12600728, at *5 (S.D. Fla. Jan. 27, 2014) ("In the Eleventh Circuit, the party seeking to intervene as a matter of right bears the burden of making a concrete showing of the threshold factor of inadequate protection and must do so without relying solely on conclusory allegations, which are insufficient." (citing *Cont'l Graphic Servs., Inc. v. Cont'l Cas. Co.*, 681 F.2d 743, 745 (11th Cir. 1982))).

Generally, a presumption exists "that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention."  *Fed. Sav. & Loan Ins. Corp. v. Falls Chase*

---

[4] There are none here.

*Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993). This presumption "imposes upon the applicant for intervention 'the burden of coming forward with some evidence to the contrary.'" *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). Conclusory allegations are not enough and proposed interveners are required to produce tangible evidence to show that the representation "may be" inadequate. *Dewit v. United Parcel Serv., Inc.*, 2017 WL 3000030, at *1 (N.D. Fla. Mar. 31, 2017). The Tribe bears the burden of proof to establish all four bases for intervention as a matter of right. *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 291 (11th Cir. 2020).

## IV.   ARGUMENT

### A.   The Tribe cannot Intervene as of Right.

The Tribe's Motion fails because: (1) asserted sovereign status does not automatically confer a right to intervene; (2) Defendants adequately represent the Tribe's interest in the Compact; and (3) the Tribe does not allege or have an interest in the Implementing Law or the Equal Protection Claim. As the Tribe cannot meet all of the requirements of Rule 24(a), it has no right to intervene in this matter.

### 1.    Asserted Sovereign Status Does not Entitle The Tribe to Intervene.

The Tribe would like this Court to believe that a nonparty's assertion of sovereignty foreordains Rule 24 intervention.[5]  It does not.  Contrary to the Tribe's assertion—that it must be a party to any and every case solely for the purpose of seeking dismissal—well-settled law provides the opposite.  Courts have routinely found that even if a tribe claims an interest in a litigation, the litigation may proceed in the tribe's absence.  *See Kansas v. United States*, 249 F.3d 1213 (10th Cir. 2001) (rejecting tribe's claim that is was a necessary party under Rule 19(a) as potential for prejudice was largely nonexistent because existing defendants' interests were substantially similar, if not identical to tribe's interests); *Sac & Fox Nat. of Miss. v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) (finding tribe was not a necessary party under Rule 19(a) because potential prejudice to tribe was greatly reduced by the existing defendant given that his interest in defending his actions was "virtually

---

[5] Notably, the cases relied upon by the Tribe are <u>not</u> Rule 24 intervention cases or even Rule 19(a) decision.  *See infra.* n.7; *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) (referencing the balancing of factors under Rule 19(b) only after a finding that a party is necessary under Rule 19(a)); *Enter. Mgmt. Consultants v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) (referencing tribal immunity as relevant to the balancing test of Rule 19(b) only where a tribe is a necessary party under Rule 19(a)).  The Tribe is improperly conflating the balancing test employed by courts under Rule 19(b) (indispensable party), with the burden imposed on it by Rule 24(a) and 19(a) to show representation by an existing party is inadequate.  *See Lexington Ins. Co. v. Moore Stephens Tiller, LLC*, 2016 WL 9453996, at *3 n.5 (N.D. Ga. Apr. 29, 2016) ("Rule 19(b) and Rule 19(a) have a very different analysis such that the Supreme Court's ruling on subdivision (b) does not affect the Court's current analysis of subdivision (a).").

identical" to the interests of the tribe); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1118 (E.D. Cal. 2002) (in suit seeking declaratory and injunctive relief with respect to existing and future Indian gaming compacts, "although the tribes can claim a legal interest in this lawsuit, they are not necessary parties because their legal interest can be adequately represented").   Further, an assertion of sovereign immunity is also no bar to courts finding that a tribe's interest is adequately represented—sovereign immunity alone is not antithetical to adequate representation.   *Lennar Mare Island, LLC v. Steadfast Ins. Co.,* 139 F. Supp. 3d 1141, 1155 (E.D. Cal. 2015) (holding absent party's sovereign status does not require finding of inadequate representation).

Moreover, the Tribe's sovereign interests are not even at issue here.  This action solely concerns **<u>Defendants'</u>** lack of authority and *ultra vires* conduct regarding the OSB provisions in the Compact and the Implementing Law.  It does not involve or challenge any action taken by the Tribe or seek to enforce any legal obligations against the Tribe, unlike the scenarios presented in the cases cited by the Tribe.[6] *Citizens Against Casino Gambling v. Kempthorne*, 471 F. Supp. 2d 295, 317 (W.D.N.Y. 2007), also supports the principle under Rule 19 that not every assertion

---

[6] *E.g.*, *Enter. Mgmt. Consultants, Inc., v. United States ex rel. Hodel,* 883 F.2d 890 (10 Cir. 1989) (involved enforcement of a contract against a tribe); *Kickapoo Tribe*, 43 F.3d 1491 (tribe sought to enforce compact against State of Kansas, previously held to be invalid).  Here, the Court need not determine the legal duties of the Tribe, only whether the state actors exceeded their power.

of tribal interest in a challenge to a governmental action that may have a negative impact on its gaming compact requires joinder as of right.  And notwithstanding assertions of sovereign interests, courts must make an independent determination of the factors required under Rule 24(a).

> **2.      The Tribe's Interests will be Adequately Represented Because They are Identical to Defendants' Interests and the Tribe has Failed to Rebut the Presumption that the Existing Parties will Adequately Represent it.**

Defendants' ability to adequately represent the Tribe's interest in the Compact is dispositive under Federal Rule 24(a).[7]  The Tribe does not explicitly state that

---

[7] It is similarly dispositive under Rule 19(a) because the analysis under Rule 24(a) is akin to that under Rule 19(a)(1)(B)(i).  *See Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 n.3 (1967) ("Intervention of right is here seen to be a kind of counterpart to Rule 19(a) . . . on joinder of persons needed for a just adjudication: where, upon motion of a party in an action, an absentee should be joined so that he may protect his interest which as a practical matter may be substantially impaired by the disposition of the action, he ought to have a right to intervene in the action on his own motion.").  The question of whether the absent party is adequately represented by the existing parties is similar to the question of whether the absent party's ability to protect its interest would be impaired because courts find such prejudice minimized if existing parties can represent the absent party.  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) ("An absent party with an interest in the action is not a necessary party under Rule 19(a) 'if the absent party is adequately represented in the suit.'") (quoting *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)); *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999) ("As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit.").  Relatedly, because the language mirrors one another, a determination that a party is not necessary under 19(a)(1)(B)(i) forecloses a party from intervention as a matter of right under 24(a)(2), and vice versa.  *See Mastercard Int'l, Inc. v. Visa Int'l Serv.*

Defendants will fail to represent its interest.  [DE 20; 5 ("It is far from clear that the Tribe's interests in the sports betting provisions would be adequately represented…")].  Instead, the Tribe offers vague, conclusory and unsupported statements, such as neither Defendant has "an economic or political incentive to defend the sports betting provisions *commensurate* with that of the Tribe."  [*Id.*; 6] (emphasis added).  However, the question under Rule 24(a)(4) is not whether the existing parties have an interest that is "commensurate" with that of the absent party, and the Tribe cites to no authority otherwise.  The Tribe concedes, as it must, that "[t]he Governor and Secretary and the Tribe *all share the same basic interest* in protecting the validity of the overall 2021 Compact."  [DE 20; 6] (emphasis added).

Invalidating the OSB provisions indisputably provides both an economic and political loss to Defendants and the Tribe.  While the Tribe does not explain how its political incentives would be impacted, rendering its allegation conclusory, there is no denying that the Governor would be politically impacted.  Both Defendants and the Tribe have the same interests in ensuring the Governor's actions in the Compact and the Implementing Law are upheld as a whole—a mutual political win.  In fact, the Compact states, "the Tribe and the State affirm that it is in the best interests of the Tribe and the State for the State to enter into this Compact."  [DE 18, Ex. A; I,

---

*Ass'n,* 471 F.3d 377, 389 (2d Cir. 2006) ("[I]f a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2).").

H].  The Compact was heralded as a political win for the Governor.  *See* Press Release, Governor Ron DeSantis Strikes Historic Gaming Compact with Seminole Tribe of Florida (April 23, 2021) ("'This historic compact expands economic opportunity, tourism, and recreation, and bolsters the fiscal success of our state in one fell swoop for the benefit of all Floridians and Seminoles alike,' said Governor DeSantis.  'Our agreement establishes the framework to generate billions in new revenue and untold waves of positive economic impact.") https://www.flgov.com/2021/04/23/governor-ron-desantis-strikes-historic-gaming-compact-with-seminole-tribe-of-florida/.

The Tribe's speculation about the relative economic returns to itself and the State, as represented by Defendants, also is unsupported.  Both the Tribe and the State would suffer an economic impact as the State not only loses 10% of the Tribe's guaranteed minimum payment in the first five years of the Compact,[8] as the Tribe contends, but going beyond the first five years [*See* DE 20; p. 6], the State also would lose 10% of the Net Win[9] received by the Tribe over the Compact's remaining thirty year term from the operation and play of sports betting conducted through the pari-

---

[8] The Tribe seeks to downplay the amount the State stands to lose by couching it as a vague percentage.  In reality, Two Hundred and Fifty Million Dollars ($250,000,000.00), is far from insignificant.

[9] "Net Win" means the total receipts from the play of all Covered Games less all prize payouts and free play or promotional credits issued by the Tribe.  [DE 18, Ex. A; III, T].

mutuels.  [DE 18, Ex. A; XI, C.1(j)].[10]  Thus, the Tribe and Defendants are on equal footing in that they both benefit by the operation of OSB, and will lose by its invalidation.  The Tribe's conclusory allegations fail to rebut the presumption of adequate representation or sustain the Tribe's burden to show it is entitled to intervention as of right.  *See Burke*, 833 F. App'x at 293; *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 2017 WL 5175600, at *2 (S.D. Fla. May 25, 2017); *Dewit,* 2017 WL 3000030, at *1.

The interests of the Tribe and Defendants are virtually identical.  Not only do Defendants share the Tribe's interest but the Governor, as a party to the Compact, also committed contractually on behalf of the State to defend the Compact and to "take all appropriate steps to effectuate its purposes and intent," including the sports betting provisions challenged here.  [DE 18, Ex. A; XIV, F ("Each party hereto agrees to defend the validity of this Compact."); XIX ("The Governor also affirms that he will take all appropriate steps to effectuate its purposes and intent.")].  There is no evidence that Defendants will not robustly defend the Compact or the Tribe's interest.  Further, this action primarily presents questions of law.  Thus, the Tribe's and the Governor's ultimate goal of protecting the validity of the overall Compact is not subject to factual nuances or discovery strategies but rather to defending the

---

[10] The Tribe's unsupported citation to the 2010 Compact revenue is perplexing and adds nothing to the Tribe's argument here, especially as it is not before this Court. [DE 20; 6].

straightforward legal questions presented by the Amended Complaint.  Simply put, there is only one position that can be advanced in defending this litigation by the Defendants—execution of the Compact and passage of the Implementing Law were not *ultra vires*—and there are only so many legal arguments that can be submitted in favor of this position.  S*tadin v. Union Elec. Co.,* 309 F.2d 912, 919 (8th Cir.1962) ("Mere difference of opinion among attorneys is not in itself inadequate representation within the meaning of the Rule [24(a)(2) ].  If it were, intervention of right would become almost automatic.").  Defendants have already shown that they are capable and willing to defend the Compact (including the Tribe's arguments), as evidenced in their Motion to Dismiss.  [DE 22].[11]

The Tribe fails to identify specifically how its ultimate objective of defending the OSB provisions of the Compact differs from Defendants' ultimate interest.[12]  Nor does the Tribe point to any conflicting interests between it and Defendants regarding this case.  The Tribe does not even attempt to allege that there is a collusion between the existing Defendants and Plaintiffs; that Defendants represent an interest adverse to the Tribe's; or that Defendants will fail in fulfilling their duty to represent the

---

[11] To the extent the Tribe wants to raise any additional arguments on the merits, it has the option of participating as *amicus*.  *See Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984).

[12] In fact, despite protestations that it seeks to defend the OSB provisions of the Compact, the Tribe's only actual objective is to obtain dismissal and prevent *any* court from ruling on the legality of Governor's actions and the Implementing Law.

Tribe.  *See Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844, 845 (5th Cir. 1973).  They both want the same thing: a ruling upholding the OSB provisions.

Because the interests of the Tribe and the Defendants are identical, and the Governor is contractually obligated to defend the Compact and take all appropriate steps to advance its purpose and intent, Defendants will adequately represent the Tribe.

The Tribe relies heavily on *PPI v. Kempthorne*, 2008 WL 2705431 (N.D. Fla. July 8, 2008), an unreported case, to contest adequate representation and assert that it has an interest that will be prejudiced.  However, *PPI* is not dispositive as the facts in that case do not relieve the Tribe from showing entitlement to intervention or joinder here.  In *PPI*, the plaintiff sought a preliminary injunction in an APA action challenging the 2007 Compact between Florida and the Tribe.  *Id.* at *1.  Without extensive analysis of any of the prongs of Rule 19(a), the *PPI* court accepted then-governor Crist's argument that the Tribe was an indispensable party.[13]  *Id.* at *4.

Specifically, the Supreme Court has stated that, "whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined **in the context of particular litigation**." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118, (1968)

---

[13] *PPI* is an unpublished opinion that has never been cited to and is not binding on this Court.

(emphasis added).  On this basis alone, the Tribe's reliance is misplaced because a determination under Rule 19 is a fact-specific and case-by-case inquiry.

*PPI* is wholly distinguishable because the circumstances and compact at issue in that case are significantly different than those present in the instant action.

The procedural posture in *PPI* was different.  In *PPI*, the indispensable party decision was part of the court's determination of the plaintiff's motion for preliminary injunction.  Specifically, in arguing that plaintiff did not have a substantial likelihood of prevailing on the merits, it was the then-governor himself who argued that the Tribe was an indispensable party.  Here, the Tribe has moved to intervene solely for the purpose of filing a motion to dismiss.  Unlike *PPI*, the Defendants merely join in the Tribe's Motion to Intervene, and do not independently advance their own reasons.  [DE 22; 12].  More importantly, the Defendants do not state that they cannot adequately represent the Tribe in this action as was argued by the defendants in *PPI*.

Second, the interests at stake are different.[14]  In *PPI*, plaintiffs alleged that the tribal-state gaming compact that authorized the Tribe to "conduct banked card games, including blackjack, baccarat and chemin de fer, *at all seven casinos*" permitted illegal gambling because such games were prohibited by Florida law.  The

---

[14] The plaintiff in *PPI* did "not argue that the Seminole Tribe lack[ed] an interest that w[ould] be affected by [that] litigation sufficient to satisfy the Rule 19(a) requirements for a necessary party."  *PPI*, 2008 WL 2705431, at *4.

plaintiffs took issue with the fact that there was no legislation authorizing the Tribe to legally partake in such games, as is required under IGRA, ***and sought to void the 2007 Compact in its entirety***. *See Fla. House of Representatives v. Crist*, 999 So. 2d 601 (Fla. 2008) (holding that Crist did not have the constitutional authority to bind the State to a gaming compact that legalizes types of gaming the court held are illegal elsewhere in the state). Here, the Plaintiffs seek to invalidate only the *ultra vires* OSB provisions of the Compact and Implementing Law–a claim that was contemplated by both the Defendants and the Tribe as set forth above. Indeed, the Sports Betting Severability Clause in the Compact allows the OSB provisions to be invalidated without disturbing the remainder of the Compact. The 2007 Compact had no such allowance.

Third, in *PPI*, then-governor Crist had three separate issues during the pendency of litigation that clouded his ability to adequately represent the Tribe.[15] His own authority was being questioned by a legislature that had not ratified the

---

[15] In that case, two of the defendants, the Secretary of Interior and the Acting Assistant Secretary-Indian Affairs, specifically pointed to those events as evidence to rebut the presumption of adequate representation. *See* Brief for Federal Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief Under 5 U.S.C. § 702 and 42 U.S.C. § 1983, *PPI, Inc. v. Kempthorne*, 2008 WL 4674034 (N.D. Fla. Case No. 408CV00248, Aug. 4, 2008).

compact.[16]  *Fla. House of Representatives v. Crist*, 999 So. 2d 601 (Fla. 2008). Second, while the writ of *quo warranto* remained pending and after the 2007 Compact was deemed approved, the Florida Attorney General brought suit seeking to stop publication of the compact in the federal register.  *See* Motion for Temporary Restraining Order, *Florida v. United States*, No.1:07-cv-02326-PLF (D.C.C. Jan. 3, 2008).  Third, the State and the Tribe were embroiled in their own litigation. Governor Crist's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, *PPI v. Kempthorne*, 4:08cv248-SPM, 2008 WL 4076377 ("litigation is currently still pending between the Tribe and the State").

Conversely, here, unlike in *PPI*, no Florida official, including the Defendants, has taken any action, or voiced any statement, against the Compact that would show that the Defendants' interests in defending the Compact differ from the Tribe. Further, unlike in *PPI* where it was clear that then-governor Crist was facing political pressure that could result in inadequate representation of the Tribe's interest in the 2007 Compact, here, there is no evidence or even suggestion that the Governor faces any such political pressure.  This is especially true because the Governor had compact negotiating authority under Section 285.712 and the legislature has ratified the Compact.

---

[16] As a result of the *quo warranto* challenge to the 2007 Compact, the Florida legislature enacted Section 285.712, Florida Statutes, to provide Florida governors with the authorization to negotiate and sign Indian gaming compacts.

Another basis for the *PPI* court's conclusion, not applicable here, was that there was no ability to tailor the relief to reduce harm to the Tribe's interests and at the same time afford meaningful relief to *PPI*. *Id.* at *4. Unlike in *PPI*, here, there is no need for the Court to enjoin the Tribe, because the Tribe and the Governor already accounted for how a judgment finding the OSB provisions were *ultra vires* would be addressed: the provisions are automatically severed. *Supra* at 4 [DE 18; ¶130]. Also, unlike in *PPI*, the Defendants here have ongoing obligations under the Compact, so injunctive relief directed only at them can and will provide Plaintiffs all the relief they need. Finally, as there was no legislative ratification of the 2007 Compact, the *PPI* court did not have the benefit of a record of the Tribe's chief gaming official, Jim Allen, reassuring legislators that any doubts they had about the OSB provisions would ultimately be settled in litigation defended by the Tribe and the State—never once mentioning that its sole strategy would be to claim sovereign immunity, shielding both the OSB provisions of the Compact and the Implementing Law from any judicial review. *Supra*, at 5-6.

### 3. The Tribe Cannot Intervene in Claims Challenging the Implementing Law.

The Tribe ignores the fact that this action challenges the authority of the Governor and the Implementing Law to grant the Tribe a monopoly throughout Florida for OSB. It is axiomatic that the Tribe may not intervene to defend the Implementing Law. The Tribe has no direct, substantial, and legally protectable

interest in the Implementing Law. *See Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 912 (Alaska 2000) ("Generally when the government exercises its sovereign power to enforce and defend duly enacted laws, no other entity can have an interest sufficient to satisfy Civil Rule 24(a)"). The Tribe does not even allege an interest in the Implementing Law. Even if it did, the Implementing Law is a state law and the language of the statute does not contain an unconditional right to intervene. *See GolTV, Inc.*, 2017 WL 5175600, at *2 (Rule 24(a) "states the Court must permit anyone to intervene if . . . a federal statute gives an unconditional right to intervene."). This alone compels denial of the Motion.

### 4.   The Tribe Cannot Intervene in the Equal Protection Claim.

When the government exercises its power to enforce and defend laws, no other entity can have an interest sufficient to satisfy Rule 24(a). *See, e.g.*, *Bayou Lawn & Landscape Servs. v. Solis*, 2012 WL 13118567, at *4 (N.D. Fla. June 11, 2012) (denying motion to intervene by parties asserting they would be impacted by court's ruling in case challenging certain rules promulgated by the department of labor, finding the government was the only party who could defend the action and that the government would adequately represent the interests of the proposed interveners); *Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir. 1982) ("[i]n a suit . . . brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants"); *Fl.*

21

*Wildlife Fed'n, Inc. v. Johnson*, 2009 WL 248078, at *2 (N.D. Fla. Feb. 2, 2009) (finding that applicants for intervention had no legal right to participate in the adjudication of whether the EPA performed a non-discretionary duty under the Clean Water Act); *Keith v. Daley*, 764 F.2d 1265, 1269 (7th Cir. 1985) (holding that state pro-life lobbying organization did not have sufficient interest to intervene in suit brought by a group of physicians who perform abortions challenging the constitutionality of Illinois law regulating abortion and that the government agents charged with defending and enforcing the laws were the only proper defendants); *NBD Bank, N.A. v. Bennett*, 159 F.R.D. 505, 506-07 (S.D. Ind. 1994) (finding that the insurance commissioner was the only proper defendant in an action challenging his interpretation of the National Bank Act and denying motion to intervene by group of professional associations seeking to intervene, for economic reasons, to defend the commissioner's interpretation of the statute despite the fact that the "decision in the underlying lawsuit may have a significant effect on petitioners' members' livelihoods").

The Tribe does not assert an interest in defending the government's actions violating the Equal Protection Clause.  Moreover, the Defendants can and will adequately represent any interest relating to the Fourteenth Amendment.  *Burke v. Ocwen Fin. Corp.*, 833 F. App'x 288, 293 (11th Cir. 2020)("[w]hen, as here, that existing party is a government entity, '[courts] presume that the government entity

22

adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation.'").  Accordingly, the Tribe's Motion to Intervene should be denied.

## B.   Limited Intervention Would be Futile Because the Tribe's Indispensable Party Defense Fails.

The Compact belies the Tribe's necessity[17] to this action because (1) it is severable, such that complete relief can be afforded to Plaintiffs without the Tribe; (2) Defendants will not be subject to any risk of inconsistent obligations; and (3) even if the Tribe were a "necessary party," equity and good conscience favor continuance of this action without them.  Because, after all, they promised a court would make the determination regarding the legality of the OSB provisions.

### 1.    The Court Can Grant Plaintiffs Complete Relief Because the Compact is Severable.

Under the first prong of Rule 19(a), an absent person is not "necessary" where the court can accord complete relief among existing parties.  The only relief sought by Plaintiffs is declaratory and injunctive relief against Defendants' carrying out the OSB provisions of the Implementing Law because they are *ultra vires*.  [DE 18; ¶ 8].  Specifically, the Plaintiffs seek declaratory judgment regarding the authority of the Governor and legislature to authorize the OSB provisions of the Compact and

---

[17] The Tribe only argues that it is a necessary party under Rule 19(a)(1)(B)(i). Nonetheless, Plaintiffs have included this analysis because the Tribe cannot satisfy *any* portion of Rule 19(a).

enact laws implementing these provisions.  The lawsuit is directed at the actions of state officials under federal law–not the Tribe itself.  In *Lebeau v. U.S.,* 115 F. Supp. 2d 1172 (S.S.D. 2000), the court similarly rejected the attempted intervention of two tribes who sought dismissal for failure to join them as indispensable parties.  The court explained:

> Plaintiffs seek a declaration that the 1998 Act is unconstitutional.  The 1998 Act specifically provides that if a judgment is entered in favor of one or more lineal descendants in an action challenging the constitutionality or validity of distributions under the 1998 Act, then the provisions allowing distribution to the Tribes of at least 28.3995% of the lineal descendants' share of the Judgment Fund do not apply and the 1972 Act governs.  Therefore, if the Court were to enter a judgment in favor of the plaintiffs in this case, the matter would be settled…

*Id.* at 1176.  The court went on to hold that complete relief could be accorded because plaintiffs sought a declaration that the subject law was unconstitutional and the law itself provided for what would occur if a judgment was entered.  *Id.*

In *Kansas*, a factually analogous case, the State of Kansas leased a tract of land to a tribe.  When the tribe sought to have the leased land declared "Indian Lands" for purposes of IGRA, and the NIGC agreed Kansas, sued the NIGC to challenge the secretary's decision.  The *Kansas* court held that the tribe's interests were adequately represented by the federal government and therefore there was minimal prejudice that would befall the tribe.  *Kansas*, 249 F.3d at 1225-26.  Importantly, the *Kansas* court held that "a judgment rendered in the tribe's absence would be adequate because plaintiffs' claims turned 'solely on the appropriateness of the

Secretary's actions." *Id.* at 1226.  Similarly, in *Sac & Fox*, a lawsuit seeking declaratory relief, complete relief was also able to be afforded because "plaintiffs' action focuses solely on the proprietary of the Secretary's determination." 240 F.3d at 1258.

Here, the Compact contains not only a severability clause, but it also specifically details what occurs if the OSB provisions are held invalid, which settles this matter. The Sports Betting Severability Clause provides that "if at any time the Tribe is not legally permitted to offer Sports Betting as described in this Compact, *including to Patrons physically located in the State but not on Indian Lands*, then the Compact will not become null and void." [DE 18, Ex. A; XI, C.4(e)].  The Tribe acknowledges in its Motion that "the sports betting provisions are severable so invalidation of the provisions would not affect the remainder of the Compact." [DE 20; p. 6].  Upon this Court finding that the Governor's actions and the Implementing Legislation are *ultra vires*, nothing further needs to occur with respect to the Tribe. In fact, the Tribe has already stated that it will honor any court opinion invalidating the OSB provision.  At the May 17th hearing Senate Select Subcommittee on the Seminole Gaming Compact, Jim Allen stated: "the Compact would stay in the place, the Tribe would not be allowed to offer sports betting, and the Tribe would still be required to pay all of its revenue share that is not currently paying today to the State of Florida for the balance of the term, which is thirty years." *Supra*, at 6 at 1:54:53.

In the May 19th House Session, Representative Sam Garrison, stated:

I think we all expected it, it will likely be litigated because it is an open legal question, the way this Compact has been negotiated by the Tribe and by the Governor allow for that possibility, and allow for the courts to make whatever ruling they deem appropriate given the facts and argument presented.  Whether or not it is filed under IGRA, the federal process, or Amendment 3, regardless of what the court ruling would be there is no means by which there would be a breach by the state pursuant to that ruling.

Fla. H.R. session, recording of proceedings, 22:44 (May 19, 2021) https://thefloridachannel.org/videos/5-19-21-house-session/ (on file with House of Representatives) (providing discussion by Sam Garrison).

Further, the Tribe would not have a breach of contract claim against the State when the OSB provision is invalidated.  Thus, complete relief can be afforded here without the Tribe being a party to this action.  *Lebeau v. United States*, 115 F. Supp. 2d 1172 (S.S.D. 2000)*; Shermeon v. United States*, 982 F.2d 1312 (9th Cir. 1992) (holding that complete relief could be accorded among the parties absent the Tribes at issue because if the challenged act was found to be unconstitutional, the plaintiffs would receive all the relief for which they prayed).

## 2. The State Officials Will not be Subject to any Risk of Inconsistent Obligations.

If an absent person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence leaves an *existing* party subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest, then the absent party should be joined.  The focus of Rule 19(a)(1)(B)(ii) is on the *existing* parties (Defendants) not the Tribe.   The Eleventh Circuit has held that the Rule's use of the word "obligations" refers to judicially imposed duties.  *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").  There are no existing court orders regarding the Compact, let alone the OSB provisions, that could subject the Defendants to inconsistent obligations.   Nor can there be, as the Compact automatically severs the OSB provisions if a court finds them ultra vires, and no breach of contract can be asserted against the State.

### 3.  Intervention is Futile Because The Tribe is Not an Indispensable Party to this Action.

Defendants essentially argue that sovereign immunity trumps the Rule 19 balancing test.  [DE 20; 6].  A court only proceeds to analyze whether the absent party is "indispensable" under Rule 19(b) if the Tribe is first found to be "necessary" under Rule 19(a).  Because the Tribe is not a "necessary" party under Rule 19(a), the analysis under Rule 19 ceases and the Tribe's Motion should be denied.  Regardless, even if the Tribe was sometimes "necessary," (which here, it is not) it is not "indispensable."

Contrary to the Tribe's contention, Rule 19(b) is a balancing test, *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 849 (11th Cir. 1999) ("[t]he court balances four factors in this analysis"), in which sovereign immunity does not automatically tip the scales in favor dismissal.  Even if the Tribe was "necessary" under Rule 19(a), this case need not be dismissed simply because the Tribe asserts sovereign immunity.  In fact, there is nothing in "the text of the rule nor any of the Advisory Committee's notes [that suggests any] special treatment should be accorded immune sovereigns who are absent parties."  *Pennsylvania v. Think Fin., Inc.*, 2016 WL 183289, at *8 n.7 (E.D. Pa. Jan. 14, 2016).  Balancing the factors enumerated in Rule 19(b) yields the conclusion that this action should not be dismissed, but rather should continue amongst the existing parties.

First, in evaluating "the extent to which a judgment rendered in the [Tribe's] absence might prejudice [it] or the existing parties," the analysis is essentially the same as the interest impairment analysis under 19(a).  Fed. R. Civ. P. 19(b)(1).  As described above, because the Tribe's interests are adequately represented, the Tribe will suffer no prejudice if a judgment is rendered in its absence.  Further, "prejudice to an absent party must be more than merely financial to weigh in favor of dismissal under Rule 19(b)." *Citizens Against Casino Gambling*, 471 F. Supp. 2d at 317.  This factor weighs in favor of Plaintiffs.

Second, in evaluating "the extent to which any prejudice could be lessened or avoided," it is imperative to note that Plaintiffs are not seeking to invalidate the Compact—only the OSB provisions of the Compact and the Implementing Law approving them. Fed. R. Civ. P. 19(b)(1). The Tribe states no prejudice. Every case cited by the Tribe concerns the complete annulment (or the compelled enforcement) of existing compacts. *PPI*, 2008 WL 2705431 (seeking invalidation of entire 2007 Compact); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002) ("Termination of existing compacts is central to this litigation…"); *Dewberry v. Kulongoski*, 406 F. Supp. 2d 1136 (D. Or. 2005) ("[P]laintiffs explicitly seeks a declaration that the Tribe's Compact is unconstitutional, illegal, and void …"); *Enter. Mgmt. Consultants, Inc., v. United States ex rel. Hodel,* 883 F.2d 890, 893 (10 Cir. 1989) (case not involving any state actors, "EMCI [sought] to obtain the validation of a contract with the Tribe which the Tribe, in a separate action, has brought to suit to have declared void"). That is not the case here. The relief sought by Plaintiffs is narrow, tailored, and leaves the Compact intact other than the OSB provisions. This factor also weighs in favor of Plaintiffs.

Third, in evaluating "whether a judgment rendered in the [Tribe's] absence would be adequate," this factor also weighs in favor of Plaintiffs. Fed. R. Civ. P. 19(b)(4). As discussed above, this Court can declare that the OSB provisions in the Compact and the Implementing Law are invalid and *ultra vires* without the Tribe

being present.  The Sports Betting Severability Clause in the Compact contemplates such relief being afforded and has already made provisions between the parties for when that inevitably occurs.

Lastly, in evaluating whether Plaintiffs "would have an adequate remedy if the action were dismissed for nonjoinder," this too weighs in favor of Plaintiffs.  Fed. R. Civ. P. 19(b)(4).  Under the Tribe's theory, <u>no one</u> can subject the OSB provisions of the Compact to judicial scrutiny because the Tribe concedes that "there is no adequate forum available to Plaintiffs to bring this case in the absence of a waiver of the Tribe's immunity."  [*See* DE21; 7].  The practical effect, if the Tribe has its way, would be that the OSB provisions will never be subject to judicial review, in contravention of the Tribe and Defendants' promises that its legality would be determined by a court.[18]  This is not only a bait and switch on assurances provided to the legislature and public at large, but it would also render the Sports Betting Severability Clause illusory.  Neither the Tribe nor the Defendants will ever file an action against one another to determine the legality of a provision they both contend is valid.  Thus, no court would ever have the ability to review the provisions of the

---

[18] Notably, the Tribe nowhere suggests that Plaintiffs' APA challenge against the DOI Secretary is an available forum.  And it's not, because that proceeding is against the DOI Secretary and not against the Defendants here, and is subject to different analysis.

2021 Compact.  The Tribe cannot insulate the Governor's *ultra vires* actions by using the Tribe's presumed shield of sovereign immunity as a sword.

In negotiating the Compact, the Tribe and the Governor contemplated the question of the Tribe's sovereign immunity.  So either the Tribe or the Governor never intended this legal question to be determined in court, or the Tribe and the Governor intended that this legal question be litigated in the Tribe's absence.  The latter is the only logical and ethical conclusion.  Further, as one court has held:

> [W]here it is possible to shape the relief to protect the tribes, where the [p]laintiff would have no other relief if the case were to be dismissed, and where the [d]efendants' interests are substantially aligned with the tribes' interests, it appears the action would be able to proceed among the existing parties without the tribes in equity and good conscience had we found the tribes to be necessary parties under Rule 19(a).

*Pennsylvania*, 2016 WL 183289, at *8 n. 7.  Similarly, equity and good conscience require that this action proceed between the Plaintiffs and the Defendants. Accordingly, the Tribe's Motion to Intervene is meritless and this case should proceed against the existing Defendants.

**WHEREFORE,** Plaintiffs, West Flagler Associates, Ltd. and Bonita-Fort Myers Corporation, respectfully request that the Court  deny the Tribe's Motion to Intervene and grant such other and further relief deemed just and proper under the circumstances.

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)**

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that the above-filed Motion and Memorandum of Law contain a total 7,999 words.

Dated: September 14, 2021.

Respectfully Submitted,

**BUCHANAN INGERSOLL & ROONEY PC**

*/s/ Raquel A. Rodriguez*
Raquel A. Rodriguez, FL Bar No. 511439
A. Sheila Oretsky, FL Bar No. 31365
Sandra Ramirez, FL Bar No. 1010385
2 South Biscayne Blvd, Suite 1500
Miami, FL 33131
Telephone:  305.347.4080
Fax:  305.347.4089
raquel.rodriguez@bipc.com
sheila.oretsky@bipc.com
sandra.ramirez@bipc.com

Hala Sandridge, FL Bar No. 454362
401 E. Jackson Street, Suite 2400
Tampa, FL 33602
Telephone:  813.222.8180
Fax:  813.222.8189
hala.sandridge@bipc.com

Sydney Rochelle Normil
*Admitted Pro hac vice*
501 Grant St, St 200
Pittsburgh, PA 15219
Telephone:  412.562.8800
Fax:  412.562.1041
sydney.normil@bipc.com

*Attorneys for Plaintiffs West Flagler
Associates, Ltd. and Bonita Fort-Myers
Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/ *Raquel A. Rodriguez*
Raquel A. Rodriguez, FBN 511439

4839-3094-4506, v. 13

33