IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WEST FLAGLER ASSOCIATES LTD, a
Florida Limited Partnership d/b/a
MAGIC CITY CASINO, et al.,**

    **Plaintiffs,**

v.　　　　　　　　　　　　　　　　　　Case No. 4:21-cv-270-AW-MJF

**RONALD DION DESANTIS, in his
official capacity as GOVERNOR OF
THE STATE OF FLORIDA, et al.,**

    **Defendants.**

_____/

# ORDER OF DISMISSAL

For years, the Seminole Tribe of Florida has offered casino gambling on its tribal lands. Recently, the Tribe and the State of Florida entered a compact that allows a new form of sports betting on (or through) the Tribe's reservation. The plaintiffs—parimutuel operators—are in the gambling business too, and they fear competition from the Tribe's new sports betting.

The Parimutuels contend the new compact not only hurts their business but also violates federal law. So they sued Florida's Governor and the Secretary of Florida's Department of Business and Professional Regulation (the "State Officials"). They seek a declaration that the compact's sports-betting provision

1

violates federal law, and they seek an injunction precluding its enforcement. ECF No. 18 ("FAC") at 74.

The State Officials moved to dismiss, ECF No. 22, the Tribe moved to intervene, ECF No. 20, and the Parimutuels moved to expedite, ECF No. 29. The Parimutuels also moved for summary judgment or a preliminary injunction. ECF No. 34. For the reasons below, I now find that the Parimutuels lack standing to sue either defendant, so I grant the State Officials' Motion to Dismiss. That moots all other motions.

## I.

Because the State Officials bring a facial attack as to standing, the question is whether the Parimutuels have sufficiently alleged facts to show standing. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232-33 (11th Cir. 2008). Thus, the relevant facts come from the operative complaint, and its factual allegations are accepted as true. *Id.*

### A.

The Indian Gaming Regulatory Act allows states to form compacts with Indian tribes to offer certain "Class III" gambling—including sports betting—on tribal lands. *See* 25 U.S.C. § 2710(d); *see also* 25 U.S.C. § 2703(8); 25 C.F.R. § 502.4(c). A state has a duty to "negotiate . . . in good faith to enter into such a compact" with a tribe that requests one. *Id.* § 2710(d)(7)(B)(iii). Governor DeSantis

is Florida's designated officer for negotiating tribal-state gaming compacts, Fla. Stat. § 285.712(1), and earlier this year, he negotiated one with the Seminole Tribe of Florida (the "Compact"), *see* ECF No. 18-1. The Compact expands the categories of gambling permitted on tribal land. FAC ¶ 103. For example, the Tribe may now offer "Sports Betting" and "Fantasy Sports Contests." ECF No. 18-1 at 22.

The Parimutuels don't take issue with this—at least to the extent those wagers physically take place on tribal land. The wrinkle is that the Compact explicitly authorizes Internet gambling. The Compact and its implementing legislation clarify that, at least for purposes of Florida Law, wagers on sports and fantasy sports contests are "deemed to take place" on tribal land so long as the "servers or other devices used to conduct such wagering" are physically located there. *Id.*; Fla. Stat. § 285.710(13)(b)7. The upshot is that Floridians may now place sports bets from their computers or smartphones, anywhere in Florida, and the Compact considers this to be gambling "on Indian Lands" where the servers reside. FAC ¶¶ 121-23.

In May, the Governor signed a law implementing the Compact, and the State submitted the Compact to the United States Department of the Interior for approval. *See* Fla. Stat. § 285.712; 25 U.S.C. § 2710(d)(8). The implementing law became effective immediately, FAC ¶¶ 114-15, and the Compact was deemed approved by the Department of the Interior in August, after the DOI secretary neither timely approved nor disapproved it, *id.* ¶ 116; *cf.* Indian Gaming; Approval by Operation

3

of Law of Tribal-State Class III Gaming Compact in the State of Florida*, 86 Fed. Reg. 44,037 (Aug. 11, 2021).[1] But a modification to the Compact provides that online sports betting will begin no earlier than October 15. FAC ¶ 105.

The Parimutuels, which own and operate casinos in Florida, FAC ¶¶ 9-11, 18, are not pleased with the Compact. They are not affiliated with the Tribe, and Florida law prohibits sports betting beyond what the Compact allows. *See* Fla. Stat. § 849.14; FAC ¶ 79. Thus, the Parimutuels cannot offer online sports betting (or any sports betting) unless they do so through some licensing agreement with the Tribe. *See* FAC ¶¶ 125, 137. The Parimutuels allege that they will lose revenue because their potential casino patrons will take their gambling dollars to the Tribe. FAC ¶¶ 132-36, 144-45.

**B.**

The Parimutuels filed their amended complaint on August 17, 2021, alleging that the Compact violates several federal gambling laws, plus the Fourteenth

---

[1] The Secretary of the Interior "may disapprove" a compact that violates IGRA or other federal law. 25 U.S.C. § 2710(d)(8)(B). The Parimutuels have a pending lawsuit in the District Court for the District of Columbia challenging Interior's approval of the Compact. *See W. Flagler Assocs. v. Haaland*, No. 1:21-cv-02192-DLF, 2021 WL 3666502 (D.D.C. Aug. 16, 2021).

Amendment.[2] They seek a declaratory judgment that the Compact violates the Indian Gaming Regulatory Act, 25 U.S.C. § 2710(d) (permitting certain gambling activities "on Indian lands"); the Wire Act, 18 U.S.C. § 1084(a) (prohibiting certain interstate wire communications related to sports gambling); and the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. § 5362(10) (defining internet betting on tribal lands as "unlawful internet gambling" if it is illegal under applicable state or federal law). *See* FAC at 56-57, 62-63, 70. They also seek a declaratory judgment that permitting Floridians to engage in online sports betting with the Tribe when not physically present on tribal land—while still prohibiting all other forms of sports betting in the state, Fla. Stat. § 849.14—violates Equal Protection. FAC at 74. Aside from this declaratory relief, the Parimutuels ask the court to enjoin the Governor from "implementing the 2021 Compact" as to its online sports betting provisions and enjoin the Secretary from "implementing the provisions" of the Compact's

---

[2] In the background of the Parimutuels' statutory claims—at least some of which depend upon whether the gambling at issue is authorized under state law where the tribal lands are located, *see, e.g.*, 31 U.S.C. § 5362(10); 25 U.S.C. § 2710(d)—are hints and suggestions that the Compact and its implementing statute violate the Florida Constitution. *See* FAC ¶¶ 75-78, 126, 129; ECF No. 27 at 20, 27. But the Parimutuels disclaim any state-law challenge here. *See* FAC at 5 n.5. At any rate, this court lacks jurisdiction to consider the legality of a state officer's action under state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

implementing legislation, Fla. Stat. § 285.710, as they relate to online sports betting. *See* FAC at 56-57, 62-63, 70, 74.

The State Officials moved to dismiss, arguing that the Parimutuels lack standing, that sovereign immunity bars the suit, that the Tribe is an indispensable party that cannot be joined, and that the claims all fail on the merits. ECF No. 22. Because the Parimutuels lack standing, I need not (and cannot) go past that issue.[3]

## II.

Standing is "an essential and unchanging part of the case-or-controversy requirement" for Article III jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Because standing to sue implicates jurisdiction, a court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc). To demonstrate standing at this stage, the Parimutuels had to allege specific facts to demonstrate "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be

---

[3] When a plaintiff lacks standing, I need not address other threshold issues, including the State Officials' Eleventh Amendment arguments, ECF No. 22 at 8-12. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1205 n.5 (11th Cir. 2021) (declining to address immunity because standing was dispositive).

redressed by a favorable decision." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020).[4]

Here, the Parimutuels allege an imminent economic injury from increased competition. FAC ¶¶ 142-45. The State Officials insist this is speculative, ECF No. 22 at 19, but I will accept for now that the Tribe's online sports-betting will cost the Parimutuels at least some business.[5] Instead, I will focus on the "intertwined" issues of traceability and redressability. *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1252 (11th Cir. 2021); *cf. Support Working Animals, Inc. v. Governor of Florida*, 8 F.4th 1198, 1201 (11th Cir. 2021) ("The latter two [standing] requirements—traceability and redressability—often travel together . . . .").[6]

---

[4] "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the motion-to-dismiss stage, the Parimutuels must "sufficiently allege[] a basis" for each element. *Stalley*, 524 F.3d at 1233 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

[5] It is "consistent with Supreme Court practice" to assume a cognizable injury when the "simplest and most straightforward way" to address the issue is to move directly to traceability or redressability. *Support Working Animals*, 8 F.4th at 1202.

[6] The Parimutuels argue that the Governor "concedes factually that any injury the Parimutuels establish is 'fairly traceable' to him and 'likely to be redressed' by the relief sought here." ECF No. 27 at 15. Even if there were such a concession, "every court has an independent duty to review standing as a basis for jurisdiction at any time for every case it adjudicates." *Fla. Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999).

### A.

To show that an injury is traceable to a defendant, a plaintiff must allege a "plausible causal chain" between the defendant's action and the resulting harm. *Cordoba v DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019). While the standard is "less stringent than proximate cause," *id.* at 1271, the plaintiff must nevertheless point to some causal chain linking its injury to "*the challenged action of the defendant*," *id.* at 1272 (citing *Lujan*, 504 U.S. at 560). And an injury is not traceable to the defendant "if an independent source would have caused [the plaintiff] to suffer the same injury." *Id.* (quoting *Swann v. Secretary*, 688 F.3d 1285, 1288 (11th Cir. 2012)). The Parimutuels argue that they have shown traceability to the Governor's and the Secretary's actions. But they have not.

### 1.

First, the Governor. The Parimutuels challenge several distinct actions that the Governor has taken—or allegedly will take—related to the Compact. For pre-enactment actions, they point to the fact that the Governor signed the Compact on the State's behalf after negotiating it. FAC ¶ 97; ECF No. 27 at 15; *see also* ECF No. 18-1 at 76. Also, they note that the Governor must "take all appropriate steps to effectuate [the Compact's] purposes and intent." ECF No. 27 at 3, 15-16; *see also* ECF No. 18-1 at 76. But neither of these is sufficient. The Governor's role as Florida's chief executive does include approving legislative enactments, *see Negron*

8

*v. State*, 932 So. 2d 1250, 1251 (Fla. 3d DCA 2006), and negotiating compacts with the Tribe, *see* Fla. Stat. § 285.712(1). But the Eleventh Circuit has "rejected the idea that an official's role in crafting duly enacted legislation can satisfy the traceability requirement." *Support Working Animals*, 8 F.4th at 1204. An official action must relate to enforcement—not enactment. *See Lewis*, 944 F.3d at 1298; *cf. Jacobson*, 974 F.3d at 1257 (holding that a Secretary's rulemaking power was not sufficient to establish traceability). And while the Governor must "take all appropriate steps to effectuate [the Compact's] purposes and intent," ECF No. 18-1 at 76, the Parimutuels identify no duty this provision gives the Governor that he did not fulfill by simply signing the Compact and approving the implementing legislation.

For post-enactment actions, the Parimutuels claim that the Governor must defend the Compact's validity and accept service of Compact-related official notices. ECF No. 27 at 15-16; see also ECF No. 18-1 at 70-71.[7] But these are not enough either. The Governor is one of several officers upon whom the Tribe must serve Compact-related notices—along with the President of the State Senate and

---

[7] Plaintiffs also claim that the Governor "has ongoing obligations to secure approval granting the Tribe a statewide monopoly with respect to online fantasy sports." ECF No. 27 at 16. But they admit that the State has granted no such monopoly, FAC ¶ 111, and their response cites no statute or Compact provision obliging the Governor to seek one for the Tribe. Regardless, an injunction precluding the Governor from granting the Tribe a fantasy-sports monopoly would afford the Parimutuels no obvious benefit. (There is more on redressability below.)

Speaker of the Florida House of Representatives. ECF No. 18-1 at 70-71. But any obligation to receive such notices (if receiving notices can be called an obligation) is far removed from the Parimutuels' injury.

Next, despite the Parimutuels' contrary argument, the Compact does not give the Governor a general duty to defend its validity—that duty falls to the State itself.[8] *Compare* FAC ¶ 23 *with* ECF No. 18-1 at 70 ("Each party hereto agrees to defend the validity of this Compact."). But either way, the Governor is not "actually, affirmatively 'enforcing' [the Compact]—at least in the usual sense, say, of bringing suit to implement its provisions." *Lewis*, 944 F.3d at 1298.

It is the Compact *itself* that authorizes the third-party conduct the Parimutuels want to prevent. In *Support Working Animals*, plaintiffs sued the Florida Attorney General on the theory that a law prohibiting greyhound racing could subject them to criminal penalties. 8 F.4th at 1204. But the Eleventh Circuit found that the plaintiffs lacked standing because the Attorney General had taken no actions in enforcing or threatening to enforce the law. *Id.* at 1204-05. Likewise, the Parimutuels do not allege that any of the Governor's post-enactment conduct is contributing—or will contribute—to their losing business.

---

[8] The Parimutuels argue that the Governor must defend the Compact "as a party thereto." FAC ¶ 23; *cf.* ECF No. 18-1 at 70. But the Governor is not a party to the Compact: only the State and Tribe are. *See* ECF No. 18-1 at 3.

The Parimutuels' final attempt to link the Governor to their injuries is to claim that, because he supervises the Secretary, any harm she causes is traceable to him. *See* ECF No. 27 at 15-16. Because, as discussed next, the Secretary also lacks any traceable connection to their injury, I do not address that argument separately. In short, the Parimutuels have not shown traceability as to the Governor.

## 2.

Turning to the Secretary, the Parimutuels argue that her "ongoing obligations" to oversee and inspect the Tribe's activities for compliance with the Compact "are enough" to create traceability. ECF No. 27 at 18; *see also id.* at 16. It is true that the Secretary's agency is generally charged with monitoring the Tribe's gaming activities for compliance. ECF No. 18-1 at 40.[9] The agency may also inspect the Tribe's gaming facilities, work informally to resolve facility-management disputes with the Tribe, audit the Tribe's records of payment to the State, and inspect tribal financial documents. *Id.* at 40-45. Specifically, the agency "may monitor the conduct of the Covered Games to ensure that the Covered Games are conducted in compliance with the provisions of this Compact." *Id.* at 41. Finally, the Secretary's

---

[9] The Compact calls for a State Compliance Agency to monitor the Tribe's gambling activities. ECF No. 18-1 at 22. In July 2022, a new dedicated agency will assume this role. *See* FAC ¶ 24. In the interim, that job falls to the Florida Department of Business Regulation, which Secretary Brown oversees. *Id.*

agency may review appeals from patrons' administrative disputes with the Tribe for such issues as "game malfunctions" and the "amount of the prize available" from tribal gambling. *Id.* at 32-33. If the Secretary suspects that the Tribe is violating the Compact, she may "provide copies of tribal Documents to . . . State agencies or State consultants that the State deems reasonably necessary . . . to assure the Tribe's compliance with [the] Compact." *Id.* at 46.

All of this notwithstanding, the Secretary does not have plenary regulatory enforcement authority over the Compact. The Compact provides that "[i]t is the express intent of the Tribe and the State for the Tribe to regulate its own gaming activities." ECF No 18-1 at 40. And the Compact does not "authorize the State to regulate the Tribe's government, including [the Tribe's gaming commission]." *Id.* at 46. The Tribe's gaming commission has responsibility for promulgating "rules, regulations, procedures, and standards" for managing the Compact. *Id.* at 37. And even when the Secretary provides evidence of a Compact violation to the State, the State (not the Secretary) must decide whether to "assert[] noncompliance" against the Tribe. *Id.* at 66-67.

The Parimutuels' injury is not traceable to the Secretary's actions because the Secretary's oversight role cannot affect the Tribe's rights to offer online sports gambling. In *Jacobson*, the plaintiffs sued Florida's Secretary of State to challenge a law specifying the order of candidate names on election ballots. 974 F.3d at 1242.

But the Eleventh Circuit held that the plaintiffs' harm was not traceable to the Secretary of State, even though she was charged with "general supervision and administration of the election laws." *Id.* at 1254 (quoting Fla. Stat. §§ 97.012, 15.13). In *Jacobson*, election Supervisors—not the Secretary—were responsible for printing the ballots, which they did according to the challenged statute. *Id.* at 1253. Here, the Secretary's general oversight authority under the Compact similarly does not give her authority to regulate the Tribe's conduct. The Tribe, like the election Supervisors in *Jacobson*, does not need the Secretary's permission to act.

The Parimutuels' attempt to distinguish *Jacobson* is unconvincing. They argue that the Secretary "has a central and material role in implementing the Compact," ECF No. 27 at 16, and "ongoing obligations [under the Compact] as the head of the current State Compliance Agency—DBPR." *Id.* at 18. But this generality is unhelpful. The Parimutuels point to nothing that the Secretary does under the Compact that enables the Tribe to offer online sports-betting. They correctly note that in *Jacobson*, "plaintiffs sued the wrong constitutional officer who had no control over the officer with respect to whom the injury was traceable and redressable." *Id.* Yet the Parimutuels never explain how the Secretary has control over the Tribe's online sports-betting, especially in light of the Compact's emphatic statement that it is "the express intent of the Tribe and the State for the Tribe to regulate its own gaming activities." ECF No 18-1 at 40.

13

At the end of the day, the Parimutuels are not harmed by the Secretary's ability to monitor the Tribe's casinos or submit audit reports to the State. "The plaintiffs' real problem" is with "[the Compact] itself—its existence—and the economic consequences that its passage . . . will visit on their businesses. None of that, though, appears to be due to any past, present, or likely future conduct of the [Secretary]." *Support Working Animals*, 8 F.4th at 1203. The Parimutuels have not shown traceability.

## B.

There is a redressability problem too. To show redressability, a plaintiff must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (cleaned up). Typically, that means showing that "the effect of the court's judgment on the defendant"—rather than the "persuasive effect a judicial order might have upon" nonparties—will alleviate harm to the plaintiff. *Jacobson*, 974 F.3d at 1254 (cleaned up). True, an injury may be redressable if the plaintiff can show that "it is substantially likely as a practical matter that non-parties would abide by an authoritative interpretation of the law, even if such parties would not be directly bound by such a determination." *Strange*, 3 F.4th at 1252 (quotation marks omitted) (quoting *Utah v. Evans*, 536 U.S. 452, 460 (2002)). But a plaintiff cannot show redressability without a showing that overcomes any "powerful *practical* incentives" a non-party might have to ignore a

14

court order. *See Lewis*, 944 F.3d at 1303. I address the Parimutuels' request for declaratory and injunctive relief in turn.

### 1.

The Parimutuels seek a declaration that the Compact's online sports-betting provisions violate both Equal Protection (by granting the Tribe privileges unavailable to other Floridians, ECF No. 18 ¶ 239), and several federal gambling laws (by allowing internet gambling otherwise prohibited under Florida law, *id.* ¶¶ 170, 195, 220). They argue that a declaratory judgment would have a cascading effect: a declaration against the State Officials that the online sports-betting provisions are illegal would "sever[]" those provisions from the Compact "automatically," which would then prohibit the Tribe from offering online sports-betting, which would in turn prevent the Parimutuels' impending economic harm. ECF No. 27 at 17. The Parimutuels also argue that a declaratory judgment would bind the Secretary "to find any continued [online sports-betting] by the Tribe non-compliant with the Compact," which would in turn alleviate the Parimutuels' harm. *Id.*

Neither of the Parimutuels' contentions is correct. For starters, their argument rests on the "flawed notion" that a declaratory judgment would "eliminate[] the legal effect" of the Compact "in all contexts." *Jacobson*, 974 F.3d at 1255. It is true that the Compact includes a severance clause "[i]n the event that a federal district

15

court . . . shall find any provision, section, or subsection . . . invalid." ECF No. 18-1 at 68. But even assuming a declaration against the Governor would bind the *State*, it would not bind the Tribe, which would have no obligation to recognize any declaration's legal effect. *See Jacobson*, 974 F.3d at 1254. And "a favorable declaratory judgment . . . cannot make even an unconstitutional statute disappear." *Steffel v. Thompson*, 415 U.S. 452, 469 (1974). Thus, after a declaratory judgment, the Tribe could continue business as usual—to the Parimutuels' continued detriment. Even if declaratory relief would trigger the severance clause, it would not require the State to exercise its prerogative to assert noncompliance against the Tribe, *cf.* ECF No. 18-1 at 66, so a declaratory judgment would not necessarily help the Parimutuels.

The Parimutuels nevertheless argue that a declaratory judgment would likely redress their injury. ECF No. 27 at 17. And it is possible to establish redressability by showing that a declaratory judgment would, as a practical matter, alleviate their injury. *See v. Strange*, 3 F.4th at 1253. In *Strange*, abortion providers challenged a parental-consent law that featured a judicial-bypass option. *Id.* at 1246. The defendants—state officials sued in their official capacities—argued there was no redressability because state judges would not be bound to follow the declaration. *Id.* at 1252. But the Eleventh Circuit found a practical likelihood of redressability,

largely because "state judges routinely follow federal decrees that do not bind them directly." *Id.* at 1253 (cleaned up).

But practical redressability is much harder to prove where, as here, money is on the line. In *Lewis v. Governor of Alabama*, plaintiffs sued state officials for a declaratory judgment that the plaintiffs' employers had to increase their pay under a minimum-wage law. 944 F.3d at 1292. The Eleventh Circuit found no practical redressability because the nonparty employers were unlikely to abide by a declaratory judgment insisting they had to raise the plaintiffs' hourly wages by some two and a half dollars. *Id.* at 1302-03. Under the Compact, the Tribe must pay the State at least two and a half *billion* dollars over the next five years, ECF No. 18-1 at 53, including 13.75% of the Tribe's revenue from online sports-betting, *id.* at 50-51. The benefits the Tribe would receive for its billions in payments are exactly the sort of "powerful *practical* incentive[]," *Lewis*, 944 F.3d at 1303, that could lead the Tribe to disregard a nonbinding declaratory judgment. At any rate, the Parimutuels alleged no facts showing that "redress is likely as a practical matter." *Strange*, 3 F.4th at 1253 (quoting *Jacobson*, 974 F.3d at 1255), and they thus have failed to establish standing to seek declaratory relief.

## 2.

The Parimutuels also seek injunctive relief. Specifically, they request an injunction precluding the Governor from "implementing the 2021 Compact with

respect to sports betting outside the Tribe's reservation" and stopping the Secretary from "implementing the provisions of Section 285.710, Florida Statutes, with respect to online sports-betting from anywhere outside the Tribe's reservations . . . ." FAC at 74. Much of the analysis above applies to injunctive relief as well, but there are other reasons why the requested injunctions would not redress the injury.

The Parimutuels identify no ongoing duty that the Governor has that would constitute "implementing" the Compact. The Governor has signed the Compact, ECF No. 18-1 at 76, and he has signed the Compact's implementing legislation, FAC ¶ 114. As the Parimutuels acknowledge, the implementing law became effective immediately upon the Governor's approval, *id.* ¶ 115, and the Florida Secretary of State already submitted it for federal approval, *id.* ¶ 116. Now that the die is cast, it is not clear what the Governor has to do with "implementing" the sports betting provisions. So there is no indication that an injunction against the Governor would "significantly increase the likelihood" that the Parimutuels would obtain relief, "whether directly or indirectly." *Lewis*, 944 F.3d at 1301 (cleaned up). And that means they lack redressability as to him.

As to the Secretary, the Parimutuels point to more specific duties. They say the Secretary could be enjoined from overseeing the Tribe's betting programs, auditing its financial reports, inspecting the Tribe's activities for compliance with the Compact, and reviewing the Tribe's process for resolving patron-Tribe gaming

disputes. *See* ECF No. 18-1 at 32-33, 37-46. But as discussed above, these activities do not cause the Parimutuels' injury. So enjoining them would not redress that injury. *See Support Working Animals*, 8 F.4th at 1201 (noting that "traceability and redressability" requirements "often travel together"). Enjoining the Secretary from performing her oversight role would not erase the Tribe's rights under the Compact or require the State to assert tribal noncompliance. Because the Tribe's right to offer online sports-betting is not conditioned on the Secretary's determination that it is in compliance—by paying the State's share or otherwise—enjoining her to "find any continued [online sports-betting] non-compliant with the Compact," ECF No. 27 at 17, would not hinder the Tribe's operations. Thus, the Parimutuels have not shown a substantial likelihood of redress as to the Secretary.[10]

## CONCLUSION

The Parimutuels lack standing to sue the Governor or the Secretary because their actions are not fairly traceable to any alleged harm. In addition, the requested declaratory and injunctive relief would provide no legal or practical redress to the Parimutuels' injuries.

---

[10] Indeed, the Parimutuels might suffer *more* harm if the Tribe could operate its online sports-betting programs without the Secretary's oversight and inspection authority.

The defendants' motion dismiss (ECF No. 22) is GRANTED. The Tribe's motion to intervene (ECF No. 20) and the Parimutuels' motions to expedite (ECF No. 29) and for summary judgment (ECF No. 34) are DENIED as moot.

If the Parimutuels move for leave to file an amended complaint, they must do so within seven days. The State Officials would then have seven days to respond. Absent a timely motion for leave to amend, a judgment dismissing the case without prejudice for lack of subject matter jurisdiction will issue.

SO ORDERED on October 18, 2021.

                                        s/ *Allen Winsor*
                                        United States District Judge